IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RONALD WALPOLE,**

    **Plaintiff,**

    v.                                              Civil Action 2:18-cv-00241
                                                    Chief Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Ronald Walpole ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI"). This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 10). Plaintiff did not file a Reply. For the following reasons, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff applied for disability benefits and supplemental security income on September 27, 2012. (R. at 12.) Plaintiff's claim was denied initially and upon reconsideration. (*Id.*) Administrative Law Judge David Bruce issued an administrative decision on February 1, 2016 denying Plaintiff's claims. (R. at 12, 190–203.) On January 10, 2017, the Appeals Council

remanded the case to the ALJ to provide adequate support for the finding of past relevant work and a sufficient rationale to support Plaintiff's residual functional capacity. (R. at 210–12.) A hearing was held on July 12, 2017, in which Plaintiff, represented by counsel, appeared and testified. (R. at 72–107.) A vocational expert also appeared and testified at the hearing. (*Id.*) On August 10, 2017, Administrative Law Judge Jeffrey Hartranft ("the ALJ") issued a decision finding that Plaintiff was not disabled at any time after August 9, 2012, the alleged onset date. (R. at 12–29.) On February 22, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. RELEVANT MEDICAL RECORDS[1]

On November 16, 2015, John P. Abad, M.D., prescribed a wheeled walker for Plaintiff. (R. at 1788.) Dr. Abad's prescription sheet indicates the following: "Wheeled walker with hand brakes and seat [illegible] unstable gait secondary to tussive syncope[2]." (*Id.*)

## III. ADMINISTRATIVE DECISION

On August 10, 2017, the ALJ issued his decision. (R. at 12–29.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial

---

[1] Given the Court's analysis of Plaintiff's contentions of errors below, only Dr. Abad's prescription of a wheeled walker for Plaintiff is relevant. Additional medical records and hearing testimony is not relevant for the analysis of Plaintiff's Statement of Errors.

[2] "Tussive syncope . . . is a syndrome in which fainting and vertigo with or without convulsions follows a paroxysm of coughing." Desmond S. O'Doherty, *Tussive Syncope and Its Relation to Epilepsy*, 3 Neurology 1 (1953).

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?
    2.    Does the claimant suffer from one or more severe impairments?

gainful activity since August 9, 2012, the alleged onset date. (R. at 15.) The ALJ found that Plaintiff has the following severe impairments: tussive syncope, diabetes, and obesity. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, and gases. He must avoid workplace hazards such as unprotected heights, moving machinery, and commercial driving.

(R. at 20.)

Relying on testimony from the VE, the ALJ concluded that Plaintiff is capable of performing his past relevant work as an assembler as generally and actually performed, and his past relevant work as a conveyor feeder/off-bearer, spot welder, and security guard as actually performed, as those jobs do not require the performance of work-related activities precluded by

---

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

See 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Plaintiff's RFC. (R. at 27.) The ALJ concluded that Plaintiff was not disabled under the Social Security Act from August 9, 2012, through the date of the administrative decision. (R. at 28.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff puts forth two assignments of error. First, Plaintiff contends that the ALJ erred in assessing his need for a wheeled walker, as prescribed by his treating physician, Dr. Abad. (ECF No. 13, at pg. 14.) Second, Plaintiff asserts that the ALJ erred in basing his assessment of Plaintiff's credibility, in part, on the findings from a prior judge's decision that had been vacated on appeal. (*Id.* at pg. 17.) The Court addresses each contention of error in turn.

**A. Plaintiff's First Contention of Error**

The ALJ determined the following with respect to excluding usage of a cane or walker from Plaintiff's RFC determination:

> At the December 14, 2015 ALJ hearing, the claimant testified . . . that he used a walker due to his legs and difficulty breathing.
>
> . . .
>
> At the July 2017 hearing, the claimant testified . . . that his biggest problems were walking and breathing and that he normally wore a brace on his right leg. He said that his ankles gave out and that he had been using a walker for over two years. He said that he had episodes of passing out after coughing spells once a week or more, though he continued to smoke a pack of cigarettes. . . . He said that he could walk one-half block with his walker. . . .
>
> . . .
>
> In February 2014, Judith Brown, M.D., examined the claimant and noted that the claimant could not walk on his toes, heel to toes, or squat, though he had clear lungs with no wheezes, rales, or rhonchi, and only moderate dyspnea with examination effort (Exhibit D22F at 4, 6). . . . He was able to walk without his cane when asked to do so (Exhibit D22F at 4).
>
> . . .
>
> A February 2015, examination showed ambulation without difficulty (Exhibit D29F at 271), but treatment notes also indicated that he walked with a cane (Exhibit

5

D29F at 275). . . . In March through October 2015, he was using a walker (Exhibit D29F at 285, 299, 313, 327, 341, 355, 369), but treatment notes indicated a normal musculoskeletal examination and symmetrical muscle strength (Exhibit D29F at 285, 289, 299, 303, 313, 317, 327, 331, 341, 345, 355, 359, 369, 373). In November 2015, Dr. Abad prescribed a walker due to the claimant's report of an unstable gait and episodes of syncope (Exhibits D31F and D32F), though, again, his treatment notes were rather unremarkable (Exhibit D29F). The claimant visited a specialist due to breathing problems and reported symptoms every other day, syncope/blackouts, and the use of a walker (Exhibit D33F at 5)[.] . . .

. . .

The record documents that Dr. Abad, who is a family medicine practitioner, and various nurses under his oversight continued to prescribe home health services in, including variously prescribing oxygen, a shower chair, a walker, a cane, and narcotic pain medication (Exhibits D10F, D31F, D34F, and D41F). Although Dr. Abad is a "treating source" as defined in the regulations, he did not express an opinion regarding the claimant's functional capacity and any indication that the claimant is disabled from work is a question of disability, which is a matter reserved for the Commissioner (20 CFR 404.1527(d) and 416.927(d)). I note that the reported need for home health care, a walker, and a cane is not well supported by medically-acceptable clinical and laboratory diagnostic techniques, and is inconsistent with other substantial evidence in the case record. Such services and accommodations appear to be based substantially on the claimant's subjective reports of symptoms and limitations that are inconsistent with objective findings of record, as summarized above. For example, in June, August, October, and November 2016, and February 2017, even Dr. Abad reported physical examinations that revealed normal findings with clear lungs and normal extremities with intact sensory function, though the claimant was using a wheeled walker (Exhibit D39F at 3, 6, 8, 11, 14) and a listed self-management goal was increased exercise, weight loss, and diet (Exhibit D39F at 4, 6, 11, 15). Specialists who have examined and/or treated the claimant, including a pulmonologist and neurologist, have not suggested conditions of a severity requiring supplemental oxygen, ambulatory assistance, or home health care. Rather, a pulmonologist, as summarized above, noted that deconditioning and an unwillingness to cease smoking were significant components of the claimant's symptoms and limitations (*for example, see* Exhibit D15F at 7). Additionally, the above-summarized longitudinal record does not document a deterioration in the claimant's condition since the prior ALJ decision to the extent that such services and accommodations would be necessary, and I note that prior decision similar[ly] found that the record did not support the need for the home health aide he was receiving (Exhibit D1A at 9).

I have given due consideration to SSR 96-9p, which provides in relevant part as follows (emphasis added):

> Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information) . . .
>
> In this case, the preponderance of the above-summarized evidence, which generally documents normal examination findings with respect to the claimant's extremities, does not support the need for a cane or walker. Indeed, the record fails to document the use of a cane or walker at all times, as there are many office visits that make no reference to his having an ambulatory aid at the time of a particular visit. Dr. Abad appears to have prescribed the cane at the request of the claimant, whereas the objective findings of record do not support a significant, ongoing basis for such a need.

(R. at 20–21, 23–26.)

Plaintiff asserts that the ALJ "confuses the issue by conflating the use of a cane by Plaintiff, which was *not* prescribed to him, with his need for a wheeled walker beginning in November, 2015, which was prescribed for him by Dr. Abad." (ECF No. 13, at pg. 16 (emphasis in original).) Plaintiff further asserts that "[w]hile the cane was not consistently used, the record indicates that the walker was." (*Id.* at pg. 17.) Plaintiff, however, fails to cite to the record in support of this assertion. Instead, Plaintiff contends that "Dr. Abad . . . obviously meant for Plaintiff to use [the wheeled walker] whenever [Plaintiff was] on his feet[.]" (*Id.*) Dr. Abad's prescription indicates only the following: "Wheeled walker with hand brakes and seat [illegible] unstable gait secondary to tussive syncope." (R. at 1788.) Despite Plaintiff's conclusion of what Dr. Abad "obviously" meant, an ALJ can properly reject the conclusory statements of treating physician's when they lack sufficient detail and explanation. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)); *Ilesamni-Woods v. Astrue*, No. 3:09-cv-0479, 2010

7

WL 5490998, at *8 (S.D. Ohio Nov. 29, 2010) (finding that it was reasonable for the ALJ to determine that a doctor did not support his opinions with objective medical evidence or treatment history when the doctor "did not explain his disability conclusions in any meaningful detail"). Furthermore, Dr. Abad's mere diagnosis says nothing with respect to the severity of Plaintiff's impairment. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition.").

Plaintiff next contends that because the ALJ found tussive syncope to be a severe, medically-determinable impairment, the ALJ had to consider "all the occupationally-relevant limitations arising from that documented medical impairment." (*Id.*) Plaintiff asserts that use of the wheeled walker arose from Plaintiff's tussive syncope because Dr. Abad prescribed the walker to him based on this condition. (*Id.* ("But Dr. Abad didn't write the prescription because of any problem with Plaintiff's extremities—he wrote it because Plaintiff was suffering severe coughing spells and passing out!").) Regardless of whether the ALJ had to consider the wheeled walker, Plaintiff's argument fails because the ALJ *did* consider whether Plaintiff required an ambulatory assistance device and determined that he did not. (*See* R. at 20–26.); *see also Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002) ("Because the cane was not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work.").

Furthermore, a plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding.

*Berry v. Astrue*, No. 1:09-cv-000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–cv–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted). Here, the ALJ thoroughly explained how the evidence supported his RFC determination. (R. at 20–26.) To the extent that Plaintiff attempts to make an argument that the RFC was not supported by substantial evidence, this argument fails. Accordingly, Plaintiff's first contention of error is **OVERRULED**.

### B. Plaintiff's Second Contention of Error

The ALJ determined the following with respect to the prior administrative decision from ALJ Bruce dated February 1, 2016:

> The remanded February 2016 ALJ decision, which was issued by another ALJ, noted that examination findings generally revealed minimal abnormalities that did not support the need for a cane or walker (Exhibit D10A). Thus, the record documents similar conclusions from multiple arbiters regarding the inconsistency of the claimant's allegations with respect to the objective findings of record.

(R. at 26.) Plaintiff argues that the ALJ "cannot use [the February 2016 decision] to bootstrap his own decision-making" and that he needed "to reach a new decision, not to simply rely on the no-longer-existing vacated one." (ECF No. 13, at pg. 18.)

The February 1, 2016 decision denying Plaintiff's claims was remanded by the Appeals Council to provide adequate support for the finding of past relevant work and sufficient rationale to support Plaintiff's residual functional capacity. (R. at 12, 190–203, 210–12.) Plaintiff cites to only one case, from the United States Court of Appeals of the Seventh Circuit, in support of his argument that a vacated judgment is of no further force or effect, *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 854 (7th Cir.), *cert. den'd*, 419 U.S. 901 (1974). *Simpson*, however, was a non-social security case regarding an action by a driver's judgment creditor, as the driver's assignee, against an automobile liability insurer to recover on a judgment in excess of policy limits. *Id.* In the case, the defendant argued that certain evidence had been improperly excluded from the jury's consideration, namely proceedings in a prior declaratory judgment action initiated by the defendant on the same policy and pertaining to the identical coverage questions. *Id.* The court dealing with the prior declaratory judgment concluded that the requisite jurisdictional amount had not been met, and so it reversed the judgment of the district court and remanded with directions that the lawsuit be dismissed. *Id.* (citing *Motorists Mutual Ins. Co. v. Simpson*, 404 F.2d 511 (7th Cir. 1969)). The *Simpson* court noted that at that point, "the district court's judgment in the declaratory action became a nullity and was hardly admissible in the instant case on the coverage issue." *Id.* This statement by the United States Court for the

Seventh Circuit Court of Appeals on a case of entirely different subject matter than the instant action fails to support the argument that the ALJ should not have referenced the previous administrative decision in arriving at his conclusions.

Assuming *arguendo* that *Simpson* applies in the instant case, it is inapposite as the Appeals Council did not vacate the February 1, 2016 decision, but rather remanded it to the ALJ on specific grounds. "[I]t is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018). Furthermore, "[a] later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934. Here, the ALJ did not "bootstrap" his own decision to the February 1, 2016 decision. Rather, he noted the consistent findings in addition to making his own determinations. Accordingly, Plaintiff's second contention of error is **OVERRULED**.

## VI.  CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

**Date: August 26, 2019**              /s/ *Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **CHIEF UNITED STATES MAGISTRATE JUDGE**

11